JOHN E. BRAGONJE (SBN 9519)
e-mail: JBragonje@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel:    702.949.8200
Fax:    702.949.8398

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AQUATECH CORPORATION, d/b/a UNITED AQUA GROUP, <br><br> Plaintiff, <br><br> vs. <br><br> JTS POOLS, INC.; JAMES MATTHEWS; <br><br> Defendants. | Civil Case No. 2:24-cv-01789-APG-BNW |

## <u>NOTICE OF REQUEST TO DISMISS WITHOUT PREJUDICE</u>

Comes now Plaintiff, Aquatech Corporation, d/b/a United Aqua Group ("Aquatech"), by and through the undersigned counsel, and hereby notifies this Court of its request to dismiss this case *without prejudice* so the case may be refiled in a different forum. On October 10, 2024, the Court directed Plaintiff to file a notice with the Court declaring its election as to whether the case should be dismissed without prejudice to be pursued in a different forum, or transferred to another federal court. The Membership Agreement for Defendant JTS Pools, Inc. differs from those the Court has previously reviewed, which would result in a different outcome. (*See* Membership Agreement, attached hereto as **Exhibit A**.) Nevertheless, Aquatech hereby respectfully requests that the Court dismiss this case *without prejudice* to permit it to be refiled in a different forum, and

126541207.3

1    for such other and further orders as the Court deems just and proper.

2    DATED October 31, 2024              **LEWIS ROCA ROTHGERBER CHRISTIE LLP**

3

4    _____

5    JOHN E. BRAGONJE (SBN 9519)
     e-mail: JBragonje@lewisroca.com
6    3993 Howard Hughes Parkway, Suite 600
     Las Vegas, NV 89169
7    Tel:    702.949.8200
     Fax:    702.949.8398
8

9    *Attorney for Plaintiff*

10

11

12

13

14    IT IS SO ORDERED:

15    Dated: _November 1, 2024_____

16

17    _____
      ANDREW P. GORDON
18    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

126541207.3

2

# EXHIBIT A

United Aqua Group

Membership Agreement

# EXHIBIT A



*0345*

**MEMBERSHIP AGREEMENT**

THIS AGREEMENT is made and entered into between AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), with its principal office at 8810 Spanish Ridge Avenue, Las Vegas, NV 89148 ("UAG") and **JTS POOLS**, whose corporate address is 1761 Chessie Lane, Ottawa, IL 61350 ("Member") executing this Agreement;

WITNESSED: AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) owns, licenses and uses the trademark "Aquatech", "AquaValue", and "AquaCommercial" throughout the United States in connection with the construction, servicing, and maintenance of residential and commercial swimming pools, ponds, fountains and water features, and the sale of swimming pool equipment, chemicals and products; and those corporations and businesses that UAG has already licensed the non-exclusive trademark "Aquatech", "AquaValue" and "AquaCommercial" to are hereinafter referred to as "Members"; and Member recognizes that the trademark "Aquatech", "AquaValue" and "AquaCommercial" has become synonymous with excellence and high standards in the swimming pool industry through the efforts of UAG and its Members; and UAG has established, and continues to establish recommended sources of supply for swimming pool equipment, supplies and accessories to its Members, using UAG's purchasing power and quantity discounts; and Member desires to become a Member to possibly achieve cost savings on purchases and to obtain a non-exclusive license from UAG with respect to a trademark license granted in exhibit "A", attached hereto, of this agreement;

NOW THEREFORE, for and in consideration of the payments and promises hereinafter made, the parties agree as follow:

1.

MEMBERSHIP GRANT AND LICENSE OF EXHIBIT "A" TRADEMARK: UAG hereby designates and appoints Member as an authorized UAG Member, and Member hereby accepts Membership in UAG. UAG hereby licenses Member to use the trademark granted in Exhibit "A" attached hereto in connection with Member's business, per the provisions of Exhibit "A", unless an exception or restriction for trademark(s) use is noted in Exhibit "A". Member's general business office and all satellite offices using the trademark(s) granted must be within the territory described in Exhibit "A" ("Territory"). UAG agrees that it will not knowingly permit other Members to maintain or open business offices within the Territory using the licensed trademark(s) granted in Exhibit "A" without the written permission of Member, unless an exception is noted in Exhibit "A" of this

1

agreement which shall allow trademark(s) use without written permission of Member. Member acknowledges that UAG has licensed other Members to use the non-exclusive trademarks "Aquatech", "AquaValue" and "Aqua Commercial". The license granted hereby in no way restricts Member from building and constructing swimming pools and selling swimming pool equipment and products wherever Member desires, but does restrict the area in which Member may maintain an office using the licensed trademark(s) granted in Exhibit "A" in connection with its business. Member shall not use any UAG trademark except those trademark(s) licensed and granted in Exhibit "A".

2.

UAG'S OBLIGATIONS: UAG agrees to provide, make available and furnish to Member the following services and goods on the same terms and conditions as provided to its other Members, it being clearly understood that UAG has no affirmative duty to provide each and every item at one time, or at any time:

(a) Creation of national and regional advertising and marketing campaign to enhance the trademark(s) as licensed and granted in Exhibit "A", for the Member's business; and make available to Member trademarked digital and print sales brochures, assorted literature for use in the sale of swimming pools and related equipment and chemicals to the public, advertising mats, swimming pool care and safety brochures, direct mail templates and programs, trademark insignias for digital and print media, stationery, forms, envelopes, business cards, apparel and other assorted decals and collateral;

(b) Utilize its best efforts to constantly seek and recommend to Members sources of supply for equipment, chemicals, printed matter and negotiate for the best available prices for such goods;

(c) Periodically make available to Member recommended sources of supply for products, equipment, accessories, chemicals and swimming pool supplies manufactured by or for UAG;

(d) Periodically provide Member with alternate recommended sources for supplies, equipment and chemicals when and as circumstances warrant;

(e) Develop and initiate United Aqua Institute educational curriculum, training programs, webinars, procedures and techniques designed to be of assistance to Member in running its business, and invite Member to same;

(f) Provide Member results of any market research, investigations and research as is conducted by UAG, if any;

(g) Offer Member the option to purchase, but not the obligation to purchase, up to Four Thousand Five Hundred (4,500) shares of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), Common "A" Series

2

Stock on the same terms and conditions as offered to its other Members in blocks of ten (10) shares, at a purchase price equal to the book value of those shares as determined by the most current financial statements of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG),. Such shares must be pledged to UAG by Member to secure Member's account indebtedness to UAG.  Such Pledge Agreement is attached hereto as Exhibit "D".  In the event of default and liquidation of Member's stock in AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), Member shall be entitled to its surplus over and above the sums owed UAG in accordance with Article 11 of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG),  Articles of Incorporation, a copy of which is on the reverse side of each share certificate;

(h)  Periodically conduct and make available to Member meetings of Members to discuss matters of mutual concern; and to

(i)  Extend to Member the same services and price as it extends to all other Members, but for specific services and prices made available by vendors or suppliers exclusive regions of the country or select groupings of Members.

3.

MEMBER'S OBLIGATIONS: Member agrees to and shall:

(a)  Prominently use, display and identify itself with the licensed and granted trademark(s) attached hereto in Exhibit "A" in its advertising and marketing efforts, solicitations, letterheads, digital and printed matter, sales materials, offices, vehicles, and displays in accordance with the trademark guidelines, unless a restricted territory license is noted in Exhibit "A", which restricts and/or limits the use of trademark(s); however, that Member shall not use the licensed and granted trademark(s) in its official registered corporate name without prior expressed written permission of UAG;

(b)  Respond to and pursue all sales inquiries referred to it by UAG, if any, promptly and in a businesslike manner; and serve, advertise and market to every area of its licensed territory as noted in Exhibit "A";

(c)  Utilize a computer system for the purposes of placing purchase orders with or through The UAG Purchasing System – The UAG Store, located on the world wide web (internet) at www.unitedaquagroup.com;

(d)  Establish and develop training programs and systems for its employees, and maintain the quality of construction of swimming pools constructed by it in

such a manner as to assure the integrity of the all trademark(s) licensed and granted by UAG hereto in Exhibit "A";

(e)    Maintain standards of construction, maintenance and service on all swimming pools in accordance with the Association of Pool Spa Professionals ("APSP") minimum standard, in effect at time of construction or service, to assure the integrity and goodwill of all trademark(s) licensed and granted hereto in Exhibit "A"; however, Member is free to maintain such standards as it desires that are greater than APSP's minimum standards;

(f)    To promote and enhance the good name of UAG, United Aqua Group, Aquatech Corporation whenever and however possible;

(g)    Pay all SUPPORT (Management) fees for purchases in accordance with Exhibit "F" attached hereto, owed to UAG, and pay all invoices and fees presented by UAG when and as due in strict accordance with UAG's credit policy, attached hereto as Exhibit "C", or as amended from time to time;

(h)    Maintain sufficient working capital for the operation of its business in the ordinary course;

(i)    Obtain, procure and maintain necessary licenses in good standing to conduct business and comply with all laws, ordinances and local regulations of competent public authorities for the area in which Member transacts its business;

(j)    Use its best efforts to develop, promote and continuously increase the sales of UAG swimming pools, products, equipment and accessories by aggressively promoting its sales program through advertising and by maintaining an active sales force in all territory areas as described in Exhibit "A";

(k)    Purchase its annual requirements for goods and services, for which there is an UAG recommended source, from UAG, during the term of this Agreement; and acknowledge receipt of UAG's current list of recommended sources for products, goods, equipment, chemicals, services, and swimming pool supplies and accessories; Member agrees this provision is reasonable and necessary for UAG to be able to use its purchasing power to procure for all its Members, quantity discounts, refunds, rebates, reward points, and other purchase incentive on products offered and sold through UAG; and understands a substantial breach of this provision may lead Membership suspension or termination on recommendation of UAG's President to its Board of Directors; however, UAG recognizes that occasionally there are, and will be, legitimate reasons for purchases from non-UAG recommended sources; and UAG

4

reserves the right and may request for Member to furnish information of goods and products purchased from non-UAG recommended sources at any time;

(l)    Furnish to UAG its annual (and to furnish quarterly, if requested in writing) financial statements for its previous fiscal year, prepared in accordance with generally accepted accounting principles (GAAP), within ninety (90) days following the close of Member's fiscal year, including balance sheets and profit and loss statements certified by accountants or by the Chief Financial Officer of the Member;

(m)    Develop and maintain standard business procedures and accounting systems and permit periodic review of same by UAG;

(n)    Pay an initial non-refundable Membership application fee of $3,000;

(o)    Pay the monthly UAG Membership due of $300 charged all Members by UAG when and as due in strict accordance with UAG's credit policy, attached hereto as Exhibit "C"; with the first month due following execution of this Agreement, and continuing each succeeding month for the full term of this Agreement;

(p)    Abide by and be bound by any increases in monthly due or other charges applicable to all Members approved by UAG's Board of Directors from time to time;

(q)    Provide UAG with the continuing guaranty of its controlling shareholder(s) of Member's account with UAG in form identical to Exhibit "B" attached hereto contemporaneous with Member's execution hereof;

(r)    While the Member and its shareholders are at liberty to sell and purchase interest in Member at any time without UAG's approval or consent, Member shall not have a change in its controlling ownership (majority ownership) during the term of this Agreement without UAG's prior written approval; which approval will not be unreasonably withheld.  Such a change in controlling ownership shall require the payment of a Membership transfer fee of $1,500.00, a new Membership Application declaring all shareholders, UAG Membership Committee approval, a new Membership Agreement, and personal guaranties naming each new shareholder(s) and shareholder's spouse(s). Upon execution of a new Membership Agreement, UAG may release the selling party's personal guaranty if all debts and other obligations have been fulfilled by seller to the satisfaction of UAG;

(s)    Pay a one percent (1%) stock ownership purchase surcharge to UAG on purchases made (as noted in Provision 3(k) herein) by Member through UAG;

(t) Authorize UAG to utilize the one percent (1%) stock ownership purchase surcharge referred to herein, together with any vendor purchase incentives, or rebates on products purchased through UAG that Member may be entitled to, toward the purchase of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) stock for Member account in an amount and to a level necessary to fully secure the credit line of Member as agreed to between UAG and Member;

(u) Understand the retention of vendor purchase incentives, or rebates and the one percent (1%) stock ownership purchase surcharge will continue until Member has fully secured the credit line of Member with acquired, but pledged, AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) stock. If Member has not purchased 4,500 shares of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) stock when Member has reached the value of credit line established for Member, Member can continue to purchase up to 4,500 shares of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) Common Series "A" Stock.

(v) Not disclose, publish, or otherwise reveal any confidential information received from UAG to any party whatsoever except with the prior written permission of UAG. Member agrees confidential information is proprietary to UAG and Member shall hold the same in confidence, other than for the purposes of its direct business with UAG, and shall disclose it only to its company officers, directors, or employees with a specific need to know. Confidential information means any information, including but not limited to, vendor pricing, vendor programs, vendor rebates, UAG incentives, content within all UAG websites, e-mail and other digital information delivered or received to Member from UAG, portal software and technologies, UAG business processes, methods, UAG copyrighted works, and Member Exchange portal website login user names and passwords.

4.

TRADEMARK INTEGRITY: UAG reserves the right to review and approve in writing all advertising, promotional materials and design specifications to be used by or implemented by Member, which include all trademark(s) licensed and granted in Exhibit "A" attached hereto. Such approval shall not be unreasonably withheld and is required to maintain uniformity of standards and quality by all Members licensed to use UAG trademark(s). Member agrees to report any unauthorized use of UAG trademark(s) in its Territory, or to report any confusingly similar mark

6

used by a competitor of Member. UAG shall have the primary responsibility for protecting the integrity of the UAG trademark(s), and Member shall assist UAG in such protection to the extent called upon or required by UAG.

5.

DEFAULT OF MEMBER: Each of the following shall constitute an event of default by the Member:

(a)    The failure to perform any of its obligations under this Agreement;

(b)    Failure to make minimum purchases as provided by Provision 3(k);

(c)    Failure to pay any invoice due UAG, its subsidiaries, affiliates, or direct business vendors within the due date of such invoice;

(d)    Failure to abide by the credit policy of UAG attached hereto as Exhibit "C" or as distributed to Member from time to time;

(e)    Failure to maintain APSP's minimum construction, installment and service standards;

(f)    The filing of a voluntary petition in bankruptcy, or application for a receiver of its business, or being declared bankrupt after an involuntary petition has been filed against it;

(g)    Failure to satisfy any final judgment obtained against it immediately upon the expiration of the time for appeal, or a final decision in the case;

(h)    Permitting the continuance of an attachment or garnishment against it for a period of longer than seven (7) business days;

(i)    Failure to submit financial or other reports as required by this Agreement to UAG or the furnishing of false reports; or

(j)    Failure to maintain general liability insurance naming AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) as additionally insured as required by this Agreement; or

(k)    Use of the any trademark(s), not licensed and granted in Exhibit "A" on equipment, products or accessories not purchased from or through UAG; and using the trademark(s) without first seeking approval as provided by Provision 4;

(l)    Failure to maintain vendor pricing, vendor programs, UAG rebates and incentives, and the like as confidential information provided by Provision 3(v);

(m)    Use of UAG trademark(s) without written license and grant as noted and/or restricted in Exhibit "A" of this Agreement.

7

6.

<u>TERMINATION OF MEMBERSHIP</u>:  Upon the occurrence of any of the events of default described in Provision 5 or Exhibit "A" attached herein, UAG shall provide written notice of such default to Member.  Member shall have fifteen (15) days from receipt of said notice to cure the default.  In the event Member does not cure the default to the satisfaction of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), the Membership and all Membership rights shall automatically by suspended pending terminate review.

    (a) Upon the termination of Membership as herein described the Member shall immediately:

        1. Cease using all trademark(s) licensed and granted in Exhibit "A".

        2. Send notices to each customer of Member of its disassociation with UAG.

        3. Send notices in conjunction with UAG, to each supplier of goods of the termination of this Agreement.

    (b) Immediately upon the termination of the Membership as described herein, the grant of the license described in Provision 1 and granted in Exhibit "A" attached hereto, shall terminate.

    (c) Upon termination hereof from whatever cause, Member shall be obligated to pay all costs, expenses, and damages, including attorneys' fees incurred by UAG as a result of such termination.

    (d) If the Member fails to perform any obligations described in Provision 6 hereof, UAG shall be entitled to seek injunctive relief, as well as other legal remedies to which it is entitled.

    (e) All rights as a Member of UAG shall cease on the termination of Membership. Termination shall not relieve the Member from obligations for charges incurred, services or benefits actually rendered, dues, assessments or fees, or for any obligation arising prior to and after the date of termination.

7.

<u>RENEWAL AND VOLUNTARY TERMINATION</u>: This Agreement shall continue until the 31st day of March after the execution of this Agreement.  This Agreement shall renew itself automatically without notice each year thereafter.  At any time after execution hereof, either party may give the other party written notice of termination upon (90) ninety-days before the effective termination date.  This mutual right may be with or without cause, or for the mere convenience of either party. Provided, the AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) Board of Directors' reserves the right to terminate Agreement, without notice or cause, upon an AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) Board of Directors' resolution to so terminate Agreement.

8

009

8.

<u>RELATIONSHIP OF PARTIES</u>: Member is a separate, distinct and independent entity and not an agent of or for UAG, Aquatech Corporation, or any subsidiary thereof.  This Agreement does not and shall not be deemed to constitute or appoint Member as an agent, legal representative, employee, partner, or joint venture partner of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) for any purpose whatsoever, and Member has no right or authority to create or assume any obligation or responsibility express or implied on behalf of or in the name of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) which may in any manner bind AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG).

9.

<u>CREDIT</u>: UAG may extend to Member a line of credit for the purchase of advertising materials, goods, equipment, supplies, inventory, chemicals, services, and swimming pool supplies and accessories from UAG.  UAG shall determine the exact amount of such line of credit from time to time on the basis of the Member's needs and its financial statements and profit and loss statements as provided to UAG.

10.

<u>PURCHASE SERVICE – UAG STORE & DISCLAIMER OF WARRANTIES</u>: Member expressly understands and agrees that: UAG shall not be liable for failure to make deliveries to Member due to conditions or causes not subject to or beyond UAG's control. Member is responsible for any sales, use, excise, privilege, gross receipts or value added tax imposed by applicable taxing jurisdiction with respect to Member's purchase of taxable property or services, unless tax has been collected by seller. If a transaction is exempt from the above-mentioned taxes, it is the Member's responsibility to provide and maintain a valid exemption certificate or other evidence of such exemption in a form acceptable to the applicable taxing jurisdiction to UAG. Member's use of www.unitedaquagroup.com also referred to as the UAG Purchase Service, group purchasing, and/or The Aquatech Store ("SERVICE") is at its sole risk. The SERVICE is provided on an "as is" and "as available" basis. UAG makes no warranty that the SERVICE will meet Members' requirements; the SERVICE will be uninterrupted, timely or error-free in regard to pricing, manufacturers' price change updates, discrepancies in product descriptions, or product catalogs; the results that may be obtained from the use of the SERVICE will be accurate, reliable or helpful; the quality of any products, affiliate services, information or other material purchased or obtained by Member through the SERVICE will meet Members expectations.  Member acknowledges that there is no warranty that the SERVICE will detect viruses present on or sent to a user's computer system, network or email server or that the SERVICE will block spam or bulk email. Any material downloaded or otherwise obtained through the use of the SERVICE is accessed at Member's own discretion and risk, and Member will be solely

9

responsible for any damage to its computer system or loss of data that results from the download of any such material. No advice or information, whether oral or written, obtained by Member from AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) or through the SERVICE shall create any warranty not expressly stated herein. Under no circumstances shall AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) be responsible and/or liable for any damages, consequential damages, loss of profits, losses, expenses, interest, debts, dues, taxes, fines, injuries, liabilities, assessments, costs, events, claims, actions, lawsuits, attorneys' fees, or any other loss or damage arising directly and/or indirectly from products and/or the use of the products purchased from or through the SERVICE. AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED BY LAW OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF TITLE, CONDITION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. PRODUCTS, EQUIPMENT AND ACCESSORIES PURCHASED FROM OR THROUGH THE SERVICE BY MEMBER ("PRODUCTS") SHALL BE FURNISHED TO MEMBER WITH SUCH WARRANTIES THAT UAG'S MANUFACTURERS, SUPPLIERS, AND SERVICE AFFILIATES PROVIDE. THE ONLY WARRANTY WITH RESPECT TO ANY OF THE PRODUCTS IS THAT OF THE PRODUCTS' MANUFACTURER, IF ANY. UAG IS NOT THE MANUFACTURER OF THE PRODUCTS AND THEREFORE AS TO UAG, THE PRODUCTS ARE SOLD IN "AS IS" AND PRESENT CONDITION, AND WITHOUT WARRANTY OF ANY KIND.

11.

INDEMNIFICATION: Member agrees to indemnify AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) and hold its subsidiaries, affiliates, officers, directors, employees, agents, partners, service providers, and licensors harmless from any and all loss, damage or liability whatsoever arising from the negligence or willful misconduct of Member, any breach by Member of its obligations hereunder or in any way arising from a conduct of Member's business. Member is obligated to maintain general liability insurance for its business, with minimum liability occurrence limits of $1,000,000, or at limits set forth by UAG in writing, naming AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) as additional insured certificate holder. The Member shall have no obligation to indemnify AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) for loss, damage or liability arising from the gross negligence or willful misconduct of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG). This indemnification shall include reasonable attorney's fees and extends, without limitation, to claims of personal injury, wrongful death and product liability.

12.

<u>NOTICES</u>: Any notices from one party to the other required by the terms of this Agreement shall be in writing and sent by prepaid registered mail to the parties at the addresses set forth on the execution page hereof.  Either party may change the address to which notice is to be given by notifying the other party of the new address in accordance with the terms of this Provision.

13.

<u>PARTIES BENEFITED</u>: This Agreement shall be binding upon the parties hereto and their successors.

14.

<u>ASSIGNMENT</u>: This Agreement is entered into by UAG relying upon the reputation, experience and financial responsibility of Member and this Agreement shall not be transferred or assigned by Member without the prior written approval of UAG, which will not be unreasonably withheld.

15.

<u>INVALIDITY</u>: In the event that any provision of this Agreement is at any time declared invalid or null and void by any Court, all remaining portions of this Agreement shall continue in full force and effect a fully as if such invalid clause were not a part of this Agreement.  It is the intention of this Agreement that it be liberally interpreted to carry forward the intent of the parties hereto.

16.

<u>OPERATION</u>: Nothing herein shall imply a prohibition against UAG operating in a different manner either directly or indirectly with other Members within the territorial limits of the United States of America, Canada, or Mexico.

17.

<u>WAIVER</u>: The failure of either party to enforce at anytime any of the provisions of this Agreement shall not be construed to be a waiver of such provision or of the right of such party hereof.

18.

<u>ENTIRE AGREEMENT</u>: This Agreement constitutes the entire Agreement between the parties, there being no promises or representations, made, given, or relied upon not set forth herein.

19.

<u>CAPTIONS</u>: Captions are set forth for convenience only and do not constitute a substantive portion of this Agreement.

20.

<u>TIME</u>: Time is of the essence of this Agreement.

21.

GOVERNING LAW: This agreement shall be governed by and interpreted in accordance with the laws of the state of Nevada, without giving effect to its conflicts of laws principles.

22.

DISPUTE RESOLUTION: Member agrees it shall initially attempt in good faith to resolve any significant controversy, claim, or dispute arising out of or relating to this Agreement, use of any UAG subsidiary service or significant breach thereof (hereinafter collectively referred to as "Dispute") through at least one face-to-face negotiation between senior managers at the principal office location of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), located at 8810 Spanish Ridge Avenue, Las Vegas, NV 89148. Disputes which cannot be amicably resolved by the settlement discussions referenced above shall be submitted to binding arbitration concluded under the auspices of the American Arbitration Association ("AAA") pursuant to AAA's Rules, on prior written notice from one party to the other of the request for arbitration. The arbitration shall be conducted before three (3) neutral arbitrators, one selected by each party and the third to be selected by the other two. Any arbitration shall take place in Las Vegas, Clark County, Nevada. Each party shall initially pay its own expense of litigation or arbitration, including the expenses of the arbitrators, provided however, the prevailing party, shall be entitled to recover such expenses from the other party (including reasonable attorney's fees).

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed by their authorized corporate officers and their corporate seals hereunto affixed all as of this _18_ day of _Nov_ 20_16_.

UNITED AQUA GROUP MAILING ADDRESS

UNITEDAQUA GROUP
8810 Spanish Ridge Avenue
Las Vegas, Nevada 89148          By: _____
(702) 815-0400                        Lee Rincon, Chief Operating Officer

                                         (AQUATECH CORPORATION, a Delaware Corporation,
                                         DBA United Aqua Group (UAG), – CORPORATE SEAL)

"Member" JTS POOLS

By: _____    By: _____

(JTS POOLS – CORPORATE SEAL)
MEMBER MAILING ADDRESS: 1761 Chessie Lane, Ottawa, IL 61350

## EXHIBIT "A"

UAG grants a non-exclusive "AquaValue" trademark license (for use with the sale and servicing of retail swimming pool supplies and related services) encompassing a 7-mile radius around the location of **JTS POOLS**, known herein as located at 1761 Chessie Lane, Ottawa, IL 61350

LICENSED TRADEMARK TERRITORY REQUIREMENTS [AS NOTED IN PROVISION 1 and PROVISION 3(a)]:

a) If member choses to represent itself with the trademark "Aquatech" in written and/or digital form, they agree to use these trademarks and/or their insignias, marks or likeness in advertising, marketing, solicitation, letterhead, business cards, websites, social media of any form, or other collateral for any intended purpose in accordance with UAG corporate brand standards;

b) At all times operate its business to the highest professional standard, and otherwise conduct its business activities in a manner that will reflect favorably on United Aqua Group, UAG, Aquatech Corporation and not adversely affect the trademark "Aquatech", "AquaValue" and/or "Aqua Commercial" and/or other Aquatech Members, or their associated good will;

Upon the occurrence of any of the events of default described in this EXHIBIT "A" AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) shall provide written notice of such default to Member. Member shall have fifteen (15) calendar days from the date of written notification to cure the default.  In the event Member does not cure the default to the satisfaction of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG), Membership and all Membership rights shall automatically suspend pending termination review pursuant to Provision 5 and 6 of this Agreement.

Date 11/18/16          By: _Jim Matthews_
                              Jim Matthews



AQUATECH CORPORATION, a Delaware Corporation,
DBA United Aqua Group (UAG)

Date 11/21/2016      By: _Lee Rincon_
                              Lee Rincon, Chief Operating Officer

## EXHIBIT "B" CONTINUING GUARANTY AGREEMENT

In consideration of credit extended, or to be extended hereafter by Aquatech Corporation DBA United Aqua Group ("UAG") to **JTS POOLS**, whose address is 1761 Chessie Lane, Ottawa, IL 61350, along with **Jim Matthews** hereafter known collectively as ("Guarantor") Guarantor is a Member of UAG. Guarantor unconditionally guarantees the prompt and full payment of all indebtedness or liabilities owed by Guarantor to UAG no matter how, or when, arising together with interest, if any, thereon.

The undersigned agrees that UAG may, in its absolute discretion, extend credit to Guarantor in such amount(s) as it may determine, and grant extensions of time or other indulgences, as it deems expedient without notice to or obtaining Guarantor's prior approval or that of the undersigned. This is a continuing guaranty agreement and shall cover all liabilities of the Guarantor to UAG owing at any time from the Guarantor to UAG, regardless of any payments made or compromises with UAG. The liability of the undersigned shall continue despite any payments made to UAG by the undersigned or on the undersigned's behalf.

The undersigned expressly waives demand, presentment, notice of protest and of dishonor, and notices of every kind or nature. The undersigned agrees that UAG may proceed against the undersigned for any amount guaranteed hereunder without first taking any action against the Guarantor. The undersigned hereby waives the right to require UAG to proceed against the Guarantor or any other party, to require UAG to proceed against or apply any security it may hold, or to pursue any other remedy for the benefit of the undersigned.

The undersigned agrees to pay reasonable attorney's fees and all other costs and expenses, which may be incurred by UAG in the enforcement of this Guaranty, or in the collection of any said liabilities from the Guarantor or the undersigned.

This Continuing Guaranty Agreement shall inure to the benefit of the successors and assigns of UAG and bind each of the undersigned, their heirs, administrators, executors and assigns. This guarantee shall be construed as the joint and several obligation of each of the undersigned, where there is more than one guarantor.

Executed this __18__ day of __Nov__, 20_16_

By: _____
       Jim Matthews

## EXHIBIT "C" UAG - AQUATECH CORPORATION CREDIT POLICY

Aquatech Corporation DBA United Aqua Group ("UAG") invoices for purchases though the UAG Purchasing Service are processed within 2 business days of receipt of purchase order invoice from an authorized vendor. Member invoices reflect vendor invoice charges for product, tax, freight and any additional fees charged. Monthly Membership dues, Member Support Fees, and Stock Ownership Fees are invoiced at the end of each month for that month's activity. UAG will mail and/or e-mail processed Member product invoices on a daily basis to your business location. Invoice for dues, fees, and monthly statements are mailed monthly.

Payment terms for UAG invoices are due upon receipt, with a thirty-five (35) day grace period from invoice date to allow receipt of payment by UAG. Invoices for Early Buy orders will be processed with established terms as set by vendor early-buy program; however support fees for all early-buy invoices will be invoiced with standard terms. All invoices must be paid in full as billed by UAG; credits will be issued should any discrepancies occur. Account statements are prepared at the end of each month as a reconciliation tool and should not be used as a trigger for payment. Payments to UAG can be submitted by check or by wire transfer to any of the below addresses:

| Payments Regular Mail | Payment By Overnight Mail | Payment By Wire Transfer |
|---|---|---|
| Aquatech Corporation<br>P.O. Box ███████<br>Dallas, TX 75320-3636 | Aquatech Corporation<br>Lockbox ██████<br>2975 Regent Blvd<br>Irving, TX 75063<br><br>*Address is for overnight only! | Wells Fargo Bank<br>333 S. Grand Ave. 3'rd Floor<br>Los Angeles, CA. 90071<br>Payable to: Aquatech Corporation<br>Account#: ███████████<br>ABA#: ███████████ |

If payment is not received within 35 days of invoice date, the Member is considered delinquent and may be subject to a two percent (2%) per month charge on any past due balances.

A Member account that is delinquent for three (3) consecutive months, or has exceeded their established credit limit, may be placed on CREDIT HOLD. Accounts placed on CREDIT HOLD forfeit all standard credit privileges, including Aquatech Rewards Points (ARP). Members on CREDIT HOLD may continue placing orders at the discretion of UAG – provided, all orders are accompanied with payment in advance. While in a delinquent status Members must provide payment against their account of one hundred and ten percent up to one hundred and thirty percent (110% - 130%) of the amount of the order being placed, depending on the discretion of UAG. This payment will be first applied to past due Member Support Fees, Late Fees, Monthly Membership Fees, Stock Ownership Purchase Surcharges, and then against the oldest open invoices on Member's account and should not be considered a prepayment of the order. Delinquent Members requiring rush orders must wire transfer the amount of the order plus 30% to AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) before orders will be processed.

Any orders placed directly by a delinquent Member to a supplier will be deemed as an intentional effort to defraud UAG and its other Members and treated in accordance with Provision 6 of Membership Agreement. Checks returned for "no sufficient funds (NSF)" do not constitute payment. If any NSF checks are received, a cashier's check may be required until further notice, and a $50.00 fee may be assessed for the NSF check issued to UAG. Members remain on delinquent status until such time as Member has brought their account current, below their established credit limit or both. Once the appropriate condition has been met, UAG will re-evaluate Member's account and determine if Member will be released from delinquent status. Member agrees to be bound by any change in the above policy approved by AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG)'s Board of Directors from time to time.

Date 11/18/16    By: _Jim Matth_____

Jim Matthews

## EXHIBIT "D" - PLEDGE AGREEMENT

This Agreement is entered into this _21st_ day of _Nov._ 20_16_ between Aquatech Corporation DBA United Aqua Group ("UAG") and **JTS POOLS**, whose address is 1761 Chessie Lane, Ottawa, IL   61350 along with **Jim Matthews**, hereafter known as ("Pledgor").  Pledgor is a Member of UAG.

For valuable consideration, receipt of which is hereby acknowledged, Pledgor hereby agrees to pledge all the common series "A" and common series "B" stock ("Stock") in AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) as issued to the Pledgor and/or Member company, irrespective to whom share(s) are issued, upon the following terms and conditions:

1.   Pledge:  Retention of Certificates:

Pledgor acknowledges and agrees that UAG may retain any certificates representing the Stock to secure the payment of any indebtedness Pledgor or Member owes UAG and/or to secure the payment of any indebtedness Pledgor or Member may owe UAG in the future.

If Pledgor shall purchase or be entitled to purchase Stock in the future, Pledgor agrees that UAG may retain certificates representing such Stock, to secure any past, present or future indebtedness of Pledgor or Member to UAG.

If Pledgor deposits or shall deposit in the future any monies or securities for the purchase of Stock, then such deposit or deposits shall be held to secure all past, present or future indebtedness of Pledgor or Member to UAG until stock shall be issued to Pledgor or Member for such deposit.

If there shall remain any monies from any deposit subsequent to the issuance of any Stock that deposit shall continue to be held to secure all past, present or future indebtedness of Pledgor or Member to UAG.

2.   Value:

Pledgor agrees that the value of the Stock at the time UAG seeks satisfaction shall be the book value of the Stock, as hereinafter defined.  Book value for the Stock shall be determined by the financial statements of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) for its last preceding fiscal year provided that no allowance of any kind shall be made for the good will, trade name, or any intangible asset or assets of AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG).

If Pledgor or Member defaults in the payment of any indebtedness owed to UAG, UAG may exercise any and all rights which it may have under the Nevada Uniform Commercial Code or any other applicable statute, case, ruling, regulation or law.

**EXHIBIT "D" - PLEDGE AGREEMENT, Cont'd**

3. Waiver:

UAG's failure to seek satisfaction from the stock and/or deposit on any occasion shall not be construed a waiver of its right to seek satisfaction from the Stock and/or the deposit at any future time for any past, present or future indebtedness.

4. Article Eleven of the Certificate of Incorporation of Aquatech and this Pledge Agreement:

Pledgor acknowledges that the Stock is subject to Article 11 of Aquatech's Certificate of Incorporation, which provides for the repurchase of the Stock by AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) in certain events and agrees that the Stock pledged hereunder may be used to satisfy Pledgor's obligation to sell the Stock to AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG).

5. Miscellaneous:

5.1 Illegality:  If any provision of the agreement shall be determined by any Court having jurisdiction to be invalid, illegal, or unenforceable, the remainder of this agreement shall not be effected thereby but shall continue in full force and effect as though such invalid, illegal or unenforceable provision or provisions were not originally a part hereof.

5.2 Binding Effect:  This Agreement shall bind the parties hereto and their respective legal representatives, successors and assigns.

5.3 Governing Law:  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Nevada, without regard to its conflict of laws status.

5.4 Attorneys' Fees:  In the event of any dispute with respect to the subject matter of this Agreement, the prevailing party shall be entitled to all of its costs and expenses, including reasonable attorneys' fees.

PLEDGOR: JTS POOLS

By: _____
    Jim Matthews

(JTS Pools - CORPORATE SEAL)

AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG)

Date 11/21/2016 By: _____
    Lee Rincon, Chief Operating Officer

**EXHIBIT "E" - FISCAL YEAR END & DATE OF EXPIRATION FOR CURRENT GL INSURANCE**

Member: **JTS POOLS**

Fiscal Year End: _12/31/16_

Date of Expiration for Current Insurance:

Name of Insured:      JTS POOLS INC

Policy Number:       ████████████████

Producer (Agent):     BRETT DYCHE

Notice: It is a requirement of your Membership agreement to furnish to UAG the following:

1.  Your annual (and to furnish quarterly, if requested in writing) financial statements for you previous fiscal year, prepared in accordance with generally accepted accounting principles, within ninety (90) days after the close of your fiscal year, including balance sheets and profit and loss statements certified by accountants or by the Chief Financial Officer of the Member;

2.  A general liability insurance certificate, for Member's business, with minimum liability occurrence limits of no less than $1,000,000, or at limits set forth by UAG in writing, naming **Aquatech Corporation DBA United Aqua Group** as additional insured certificate holder, within 30 days of execution of this agreement from date first signed by Member.

## EXHIBIT "F" – FEES SCHEDULE

Member shall pay AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG) a UAG Support fee (Management Fee) for purchases based on the following schedule:

| Annual UAG Fiscal Year Purchases: | Support Fee: |
|---|---|
| $2,500,000.01 & up | 2% |
| $1,500,000.01 - $2,500,000.00 | 2.5% |
| $250,000.01 - $1,500,000.00 | 3% |
| $150,000.01 - $250,000.00 | 4% |
| From zero $ to $150,000.00 | 5% |

Example:  Member provides several purchase orders to UAG which all total under $150,000 in the first month of UAG's fiscal business year (Commencing April each year). Member pays 5% Support Fee on each order. Member then provides additional purchase orders which take total invoiced orders for UAG's fiscal year above next Support Fee level of $150,000.01 Member then drops to lower Support Fee percentage and pays 4% on all purchases until Member reaches next lower Support Fee level as illustrated in schedule above.

<u>CREDIT LIMIT REQUIREMENTS</u>

Company Name: **JTS POOLS**

Credit Limit Granted: **$120,000**

Note: Credit limit is based on average monthly in-season purchases through the group. Although early-buy purchases will have an effect on your credit line, UAG may, at its sole discretion, adjust your credit limit to accommodate early-buys on an individual basis.

Credit limit requested by:  Assigned by UAG

---

(UAG will complete this bottom section, upon execution of completed agreement)

CREDIT LIMIT AUTHORIZED
AQUATECH CORPORATION, a Delaware Corporation, DBA United Aqua Group (UAG)

By: _____
　　Lee Rincon, Chief Operating Officer

Date: _11/24/2016_____

## MEMBER DATA SHEET

***Please complete the following information as a new Member. This information will be
entered into the UAG database for future contact purposes:***

Company Name (Official Corp name): *JTS POOLS, INC*

Phone: *815 433-4664*

Fax: *815 433-4601*

Primary Contact: *JIM MATTHEWS*

Secondary Contact: *DARRYL LOPEZ*

Primary Mailing
Address on File: *1761 CHESSIE LN. OTTAWA, IL 61350*

Additional Mailing
Address: *1817 FOURTH ST PERU, IL 61354*

☐ Check Here If You Prefer To Use This Address as the Primary Mailing Address for Correspondence

Primary
Shipping Address: *1761 CHESSIE LN OTTAWA, IL 61350*

Secondary
Shipping Address: *1817 FOURTH ST. PERU, IL 61354*

Purchasing Agent
Contact Name: *JIM MATTHEWS*

Purchasing Agent
E-Mail Address: ████████████████████

Accounts Payable
Contact Person: *CONNIE MISKELL*

Accounts Payable
E-Mail Address: ████████████████████

Resale #: ████████

Web Site: *www.jtspools.com*

Primary
E-Mail Address: ████████████████

Secondary
E-Mail Address: ████████████████

Marital Status: *SINGLE*